**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ATSUKO LYNCH,

      Plaintiff,

   v.

HITACHI ASTEMO AMERICAS, INC.,

      Defendant.

Case No. 1:23-cv-579

JUDGE DOUGLAS R. COLE

**AMENDED OPINION AND ORDER**[1]

Plaintiff Atsuko Lynch moves to amend her Complaint to add two new claims arising under Ohio Revised Code § 4112: (1) a claim for sex discrimination, and (2) a claim that her employer retaliated against her for complaining about sex discrimination. (Doc. 9). It "is well-established that 'denial of an opportunity to amend is within the discretion of the District Court.'" *Denis Cimaf, Inc. v. Fecon, Inc.*, No. 1:17-cv-820, 2020 WL 13169496, at *4 (S.D. Ohio May 26, 2020) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, because Lynch had ample opportunity to move to amend her Complaint to include a sex discrimination claim before the deadline to do so under the Calendar Order (a deadline the parties jointly recommended, never sought to extend, and which has long since passed) and she did not exercise diligence

---

[1] The Court's original opinion referred to Ohio Revised Code § 4112.99 in discussing whether attorneys' fees could be included in calculating the amount in controversy requirement for diversity purposes. (Doc. 17, #172). However, as noted below, § 4112.99 does not apply to employment discrimination actions, like this one. The Court regrets the error and issues this Amended Opinion to correct the reference.

in attempting to meet that deadline, the Court **DENIES** Plaintiff's Motion to Amend Complaint (Doc. 9).

## BACKGROUND

In this diversity action,[2] Lynch alleges that her former employer, Defendant Hitachi Astemo Americas, Inc., violated Ohio law when her supervisor treated her less favorably than other non-Japanese and non-Asian employees and when she was "abruptly terminated" in an allegedly retaliatory manner. (Compl., Doc. 1, #3–6). More specifically, during the few months she spent at Hitachi,[3] Lynch, "an Asian-American who is a native of Japan," (*id.* at #2), claims that this supervisor behaved aggressively toward her by "often yell[ing] at [her] and address[ing] her inappropriately in Japanese." (*Id.* at #3). She says that this same supervisor treated at least one other Japanese employee at Hitachi similarly. (*Id.* at #4). And while Lynch and her co-worker both submitted reports to the Human Resources department, she alleges that "no further action was taken regarding [the supervisor's] behavior." (*Id.* at #3–4). Rather, Lynch says that after she complained to Human Resources, Hitachi began retaliating against her, culminating in her termination on October 21, 2019. (*Id.* at #4). Hitachi, on the other hand, says that its "actions were

---

[2] Lynch is citizen of Ohio, while Hitachi is incorporated in Delaware and has its headquarters in Farmington Hills, Michigan. (Doc. 1, #1; Doc. 5, #12). That satisfies § 1332's "citizens of different States" requirement. As for the jurisdictional amount, Lynch avers only that "the amount in controversy exceeds the jurisdiction [sic] minimum." (Doc. 1, #1). The Court further explores that issue below. *See infra* Part C.

[3] Hitachi admits that it employed Lynch "as a 'General Specialist' in the Human Resources department at Defendant's Blanchester, Ohio plant from July 8, 2019 to October 21, 2019 where her responsibilities included translation and interpretation between the Japanese and English language." (Doc. 5, #13).

2

motivated by legitimate, non-pretextual, non-retaliatory, and nondiscriminatory business reasons," among other defenses. (Answer, Doc. 5, #16).

Lynch filed her Complaint on September 13, 2023. (Doc. 1). But other relevant events related to this action occurred beforehand. On January 27, 2020—a few months after Hitachi fired Lynch—she dual-filed a Charge of Discrimination with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission. (Doc. 11-1, #73; 11-2, #75). In the OCRC filing, Lynch checked four boxes for the "I believe I was discriminated against because of my: (Please identify)" prompt: (1) Race/Color, (2) Sex, (3) Age, and (4) National Origin/Ancestry. (Doc. 11-1, #73). Over a year later, on May 11, 2021, Lynch brought a state-court action against Hitachi in the Delaware County Court of Common Pleas, which she later voluntarily dismissed without prejudice on July 18, 2022. (Doc. 11, #67–68). Admittedly, that case did not assert a claim for sex discrimination. But, during discovery for that state-court action, Hitachi produced 966 pages of discovery on November 29, 2021—the same documents that Defendant produced to Lynch in this action. (Doc. 11-4, #93). That initial production included the document Lynch now relies on as allegedly new evidence to support adding a sex discrimination claim. (Doc. 9, #35; Doc. 11-4, #93).

In late December 2023, the parties submitted their Rule 26(f) Report in this matter. (Doc. 6). That report recommended a compressed schedule, presumably reflecting that this case had previously been litigated, at least a bit, in state court. Of particular importance here, the Report included a "[r]ecommended cut-off date for filing any motion to amend the pleadings" of April 5, 2024. (*Id.* at #21). Based on the

3

parties' joint recommendations, the Court entered a calendar order on January 2, 2024, adopting April 5, 2024, as the deadline to move to amend the pleadings and/or to add additional parties. (Doc. 7, #26).

In between the entry of the Calendar Order and the filing of the motion at issue, the parties engaged in discovery. Twelve days after the deadline to move to amend the pleadings, on April 17, 2024, Lynch says she sent her first set of interrogatories and requests for production to Hitachi. (Doc. 9, #37). Defendant responded on June 21, 2024, and sent its own requests three weeks later. (*Id.* at #38). Lynch responded to Hitachi's requests on August 9, 2024, and sat for a deposition on August 20, 2024. (*Id.*).

On September 4, 2024—five months after the deadline to move to amend the pleadings and only a month before discovery was then set to close—Lynch filed the present motion. (Doc. 9). In it, she "seeks leave of Court to amend her complaint to make clear that her claims of unlawful discriminatory and retaliatory treatment … are also based on her protected status as a woman." (*Id.* at #35). She further specifies two proposed amendments. (*Id.* at #34). First, Lynch seeks to add a claim of sex discrimination as a fourth count. (*Id.*; Doc. 9-1, #48). Like her other claims, Lynch accuses Hitachi of violating Ohio Revised Code § 4112, although she does not identify a specific provision in that statute. (Doc. 9-1, #48). Second, Lynch seeks to amend her retaliation claim—positing that she was terminated because she complained about sex discrimination, not just discrimination based on her race and

national origin. (Doc. 9, #34; Doc. 9-1, #47). There are no additional factual allegations Lynch seeks to add to the Complaint.[4] (*Compare* Doc. 1, #2–5 *with* Doc. 9-1, #43–46).

Recognizing that the deadline for amending has long since passed, Lynch offers two reasons why the Court should grant her leave to amend her Complaint to include these new sex discrimination claims. First, is "an email exchange regarding Defendant's own investigation of the September 2019 incidents reported by Lynch which indicates that Lynch's status as a Japanese woman was related to her treatment." (Doc. 9, #35). More specifically, Plaintiff argues that this email indicates that her supervisor's behavior towards her "was based, at least in part, on her status as a Japanese woman." (*Id.*). The email itself states:

> The bottom-line is that Atsuko's allegations were not substantiated to a point where any substantial action needs to be taken against Ikeuchi-san [the supervisor]. *I do believe that he can come across as intimidating, probably particularly to Japanese woman*, but I don't think there is enough there to do more than have a discussion with Ikeuchi-san about the fact that it is generally inappropriate to address an associate's performance in front of other associates.

(Doc. 8-1, #30 (emphasis added)).

Next, Lynch argues that there is "corroborating testimony from [her own] August 20, 2024 deposition." (Doc. 9, #38). Specifically, during Hitachi's deposition of Lynch, "she testified that she now believes she was discriminated against and

---

[4] However, Lynch does seek to add a reference to more clearly identify that she is a woman. (*Compare* Doc. 1, #2 ("Plaintiff is an Asian-American[.]") *with* Doc. 9-1, #43 ("Plaintiff is an Asian-American female[.]")). But Plaintiff fails to add such references where it seems to matter most for purposes of the proposed amended complaint. (*See* Doc. 9-1, #46 ("Defendant terminated Plaintiff's employment because of her national origin and race" … "Defendant engaged in a pattern and practice of race and national original [sic] discrimination.")). Such omissions and mistakes read as careless.

5

retaliated against because of her status as a Japanese *woman*." (*Id.* at #35). This was apparently news to Lynch's counsel.

In short, Lynch argues in her motion that she did not have the email or access to her own deposition testimony before the April 5, 2024, deadline to move to amend the pleadings, and that this is thus new, previously unavailable evidence of sex discrimination. (*Id.* at #38). Further, Lynch says that the amendment will not prejudice Hitachi as it will have "ample opportunity" to engage in discovery on the new claims and will not have to "expend significant additional resources."[5] (*Id.*).

Hitachi responded on September 11, 2024. (Doc. 11). It argues that Lynch has failed to make the necessary showing of good cause for her proposed amendments because she "was clearly aware of a basis for such claims since at least 2020." (*Id.* at #67, 69–70). According to Defendant, "[w]hile Plaintiff would like the Court to believe that Plaintiff only knew about its possible discrimination and retaliation claims based on gender/sex after written discovery … and [Lynch's] August 20, 2024 deposition," the "OCRC Charge filed on January 27, 2020" coupled with "a simple conversation with Plaintiff" would have sufficed to inform Plaintiff's counsel. (*Id.* at #70). Defendant also argues that it would suffer prejudice if the Court granted Lynch's motion because it "would require additional written discovery" and "possibly re-opening Plaintiff's deposition with respect to these claims." (*Id.*).

---

[5] The discovery deadline at the time of filing this motion was October 4, 2024. (Doc. 7, #26). In the interim, the Court granted the parties' joint motion to extend the discovery deadline until December 4, 2024. (9/26/24 Not. Order). The original deadline, though, may not have given Defendant the "ample opportunity" Plaintiff suggested. (Doc. 9, #38).

6

Lynch replied on September 25, 2024. (Doc. 16). She informed the Court that her state-court complaint did not include sex discrimination claims, that the discovery produced in the state-court action was "not available to [present] counsel … until June 21, 2024," and that she "should be afforded the opportunity to test her claims on the merits" since she has not made previous amendments or acted in bad faith. (*Id.* at #152–53). The motion is now ripe for the Court's review.

## LEGAL STANDARD

Typically, amending a complaint is not a difficult endeavor. Federal Rule of Civil Procedure 15 allows any "party [to] amend its pleading once as a matter of course" either "21 days after serving it" or the earlier of "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)." Beyond that, other amendments to the pleadings are allowed "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). And courts are instructed to "freely give leave when justice so requires." *Id.*

But Rule 15's lenient "window of opportunity does not remain open forever." *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008). A court's entry of a calendar order changes things. "Once a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Rule 16(b)." *Id.* Under that standard, a "plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888,

7

909 (6th Cir. 2003); Fed. R. Civ. P. 16(b)(4) (stating "[a] schedule may be modified only for good cause and with the judge's consent").

Good cause necessitates diligence. *E.E.O.C. v. U-Haul Int'l, Inc.*, 286 F.R.D. 322, 325 (W.D. Tenn. 2012) (explaining that a party's "diligence in attempting to meet the requirements of the scheduling order is the primary measure of Rule 16(b)'s 'good cause' standard"). And "whether [a party] could have acted to meet *the proposed amendment deadline* is how courts evaluate whether a party has been diligent under Rule 16." *Hearn v. Dick's Sporting Goods, Inc.*, No. 1:22-cv-329, 2023 WL 7298616, at *3 (S.D. Ohio Nov. 6, 2023). In other words, a party seeking to amend a pleading after a scheduling order deadline must "show that 'despite their diligence they could not meet the original deadline.'" *Profitt v. Highlands Hosp. Corp.*, No. 23-5965, 2024 WL 3622448, at *3 (6th Cir. Aug. 1, 2024) (quoting *Leary*, 349 F.3d at 907).

Carelessness is the other side of the coin; it "is not compatible with a finding of diligence and offers no reason for a grant of relief." *Shane*, 275 F. App'x at 537 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.)). Stated more bluntly, "[a] litigant's inattention or error is not good cause by any standard." *Birge v. Dollar Gen. Corp.*, No. 04-2531 B, 2006 WL 133480, at *1 (W.D. Tenn. Jan. 12, 2006) (citation omitted)). Consistent with that, "[a] plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014); *see also Profitt*, 2024

WL 3622448, at *4 (cleaned up) ("a party cannot show diligence when it is 'aware of the basis of a claim for many months' and fails to pursue that claim"); *Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x. 369, 376 (6th Cir. 2009) (finding plaintiff did not establish good cause when "the factual basis for the new claims existed at the beginning of the lawsuit" and it "could not adequately explain its delay in bringing the [new] claims").

## LAW AND ANALYSIS

Lynch has not established the good cause that is a necessary precursor to allow tardy amendments to her Complaint. She has long known of the factual basis for potential sex discrimination and retaliation claims—her awareness of these facts actually predates this action. While the Court acknowledges Rule 15's generally lenient standard for making amendments to the pleadings, Lynch does not clear Rule 16's initial hurdle. And the apparently limited extent to which Hitachi would suffer prejudice does not change that analysis.

**A.  Lynch Has Not Established Good Cause to Amend Her Complaint.**

Two primary reasons explain why Lynch cannot show good cause for her untimely efforts to amend her Complaint. First, she was careless in omitting her sex discrimination and retaliation claims from her initial Complaint. Simply, she knew, or should have known, "the factual basis for the new claims … at the beginning of the lawsuit." *Com. Benefits Grp.*, 326 F. App'x. at 376. Second, at the very least, she had all the information needed to amend her Complaint well in advance of the amendment deadline set in the Court's Calendar Order.

9

The record shows that Lynch was aware of her potential sex discrimination claim long before she filed suit here. Recall, she first took steps to address her allegedly wrongful termination on January 27, 2020, when she dual-filed a Charge of Discrimination with the OCRC and EEOC. (Doc. 11-1, #73; 11-2, #75). On the OCRC form, Lynch checked the box labeled "Sex" under the prompt reading "I believe I was discriminated against because of my: (Please identify)." (Doc. 11-1, #73). She also wrote "I am an Asian female in the protected age class and of Japanese ancestry." (*Id.*). In other words, this form indicates that, as far back as January 2020, Lynch believed she was discriminated against on the basis of her sex. When "the factual basis for the [proposed] new claims existed at the beginning of the lawsuit," a failure to seek that amendment before the applicable deadline indicates a lack of diligence. *Com. Benefits Grp.*, 326 F. App'x. at 376; *see also Ross*, 567 F. App'x at 306.

Nor does Lynch's reference to the email cure that problem. Lynch was already familiar with the email she now claims she "discovered" during review of discovery in this action and that she argues "indicates [her] status as a Japanese woman was related to her treatment." (Doc. 9, #35). More on whether the email actually indicates as much shortly. For now, it suffices to say that Lynch had access to this document as early as November 29, 2021. (Doc. 11-4, #93). She therefore could have considered it at the time of drafting her Complaint or, at the very least, before the agreed deadline the Calendar Order specified for moving to amend pleadings.

Lastly, Lynch points to her own deposition testimony as new information supporting amendment. (Doc. 9, #38). But as Defendant rightly points out, "a simple

10

conversation with [Lynch] would have placed counsel on notice that she believes she was discriminated and retaliated against due to her status as a woman." (Doc. 11, #70). For Lynch to cite her own "corroborating testimony from [her] August 20, 2024 deposition," (Doc. 9, #38), as new evidence is nonsensical. True, her deposition may be when *the Defendant* first learned of the allegations and underlying facts, but the Court cannot credit Lynch's statement that it is the first time *Lynch* learned of them. Nor is the Court aware of any restriction on a counsel's ability to confer with his client that would suggest that—if acting diligently—counsel could not have learned those same facts before the deposition occurred.

Taken together, these three considerations suggest it was careless oversight during the initial Complaint's drafting that resulted in Lynch's failure to allege sex discrimination. And such "[c]arelessness or oversight is ordinarily incompatible with a finding of diligence." *Cooke v. AT&T Corp.*, No. 2:05-cv-374, 2007 WL 188568, at *2 (S.D. Ohio Jan. 22, 2007).

But even then, Lynch still had three months—from January 2, 2024, to April 5, 2024—to amend her Complaint after the entry of the Calendar Order. (Doc. 7). At any point during that time, Plaintiff's counsel could have interviewed Lynch, noticed the checked box on the OCRC form, or requested discovery produced in the previous state-court action from Lynch's prior counsel. Further, counsel could have sought discovery before the deadline, not after. (*See* Doc. 9, #37). Had any of that occurred, Plaintiff could have met the Calendar Order deadline for moving to amend the

11

pleadings. In other words, had Plaintiff acted diligently, she would have met the deadline. *Cf. Profitt*, 2024 WL 3622448, at *3.

Lynch states that "counsel has been diligent in the prosecution of this case." (Doc. 9, #37). But generalized assertions of diligence don't help. Rather, the diligence at issue here relates solely to the specific question of why counsel did not uncover or could not have uncovered the information at issue. *See U-Haul Int'l*, 286 F.R.D at 325 (explaining a lack of good cause when plaintiff-EEOC did not explain "why it did not uncover, or could not have uncovered, the information giving rise to [the] retaliation claim in time to amend the complaint in a timely fashion. Instead, the EEOC simply declare[d] that '[t]he Commission diligently attempted to meet the scheduling order's requirement.'"). And on that front, for the reasons discussed above, counsel clearly could have (and should have) discovered the relevant information here well before the deadline.

Lynch offers a few reasons why that is not so. None are convincing. First, Lynch asserts that present counsel lacked access to the discovery that was previously produced in the state-court action. (Doc. 16, #153). In other words, Lynch is arguing that her counsel did not see the email and therefore could not have known about the additional claims. But, while admittedly not directly on point, the Sixth Circuit has observed that "the substitution of new counsel does not justify failure to comply with a scheduling order." *Ross*, 567 F. App'x at 306. True, counsel was not "substituted" here, but the underlying point remains—current counsel (or Lynch herself) could have asked Lynch's counsel from the earlier state-court action to share the discovery

12

produced in that suit. And even that is almost beside the point—counsel certainly had, or should have had, access to the OCRC Charge of Discrimination form. That document, on its own, suffices to impute knowledge to Plaintiff's counsel about the potential sex discrimination claims.

But put that all aside. Even if the Court were inclined to treat the email as new evidence, the email does not say what Lynch wants it to say. Contrary to her argument, the email does not "indicate[] … [her supervisor's behavior] was based at least in part, on [Lynch's] status as a Japanese woman. (Doc. 9, #35). By its plain language, the email does not purport to provide a reason for the supervisor's behavior. Nor does the email suggest that Lynch's supervisor chose to intimidate her *because* she is a Japanese woman. Rather, the writer merely says that she could understand how a Japanese woman may be intimidated given the circumstances. That is not evidence of sex discrimination, new or otherwise.

Separately, Lynch argues that because "[h]er previous complaint filed in state court when she was represented by different counsel did not include a claim for discriminatory termination on the basis of sex" the Court should allow the amendments to the Complaint. (Doc. 16, #152–53). But the claims Lynch brought in her previous state-court action mean little when judged against the other avenues available for counsel to discover the potential sex discrimination claim—namely, the OCRC/EEOC form, the email produced in discovery in that state-court action, and the availability of a simple conversation with Lynch herself.

13

In short, Lynch has not demonstrated that she acted with the requisite diligence to warrant a finding of good cause. She could have included the claims from the outset in her initial Complaint and had ample opportunity in the months before the Calendar Order deadline to move the Court to correct that omission under the lenient Rule 15 standard. She simply failed to do so. That is not good cause.

**B.     That Hitachi May Only Suffer Marginal Prejudice Does Not Cure Lynch's Failure to Meet the Good Cause Standard.**

Lynch also argues that, even if she did not act diligently, the Court should still grant leave to amend because Hitachi will not be prejudiced, as discovery is ongoing and investigating this additional claim will not require Defendants to expend significant additional work. (Doc. 9, #38). In contrast, Hitachi says that the discovery required to address the proposed amendments would be prejudicial.[6] (Doc. 11, #70). And to Hitachi's credit, there is some support for the proposition that merely forcing Defendants to implement "a new defense … necessary to defeat the new claim" amounts to sufficient prejudice. *See Leary*, 349 F.3d at 907. But ultimately it does not matter—whether there is prejudice here or not, the Court would not grant Lynch's motion.[7]

---

[6] Hitachi also says there is "no doubt [it] would be, and is already, prejudiced by Plaintiff's Amendment," but it offers no support or reason for how it has already been prejudiced. (Doc. 11, #70).

[7] While the Court has rejected arguments like Hitachi's as unpersuasive in the past, it was under quite different circumstances. For example, in *Hearn*, this Court explained that Defendant would not be prejudiced by the addition of a negligent supervision claim and additional theory of liability because these changes were (1) based on Defendant's internal investigation, (2) "not materially different from the claims raised in the initial complaint," and (3) discovery was ongoing. 2023 WL 7298616, at *4. But that discussion occurred in a different setting. There, the Court was evaluating the prejudice to the defendant under Rule

14

To explain that a bit more fully, while the potential prejudice Hitachi identifies here admittedly seems relatively insubstantial, the minimal (or even non-existent) prejudice does not give Lynch a pass to disregard the Calendar Order. "Rule 16 was designed to ensure that 'at some point both the parties and the pleadings will be fixed.'" *Shane*, 275 F. App'x at 537 (quoting Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment); *Birge*, 2006 WL 133480, at *1 (cleaned up) ("a court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded … deadlines 'must have teeth' and must be enforced by the courts"). Consistent with that, a finding of prejudice to the non-moving party is not a necessary prerequisite for a court to deny a motion to amend a complaint after a court-deadline has passed. True, *Leary* requires that courts make "*a determination* of potential prejudice to the nonmovant … when [deciding] whether or not to amend a scheduling order." *Leary*, 349 F.3d at 909 (emphasis added). But it does not say that, absent a determination that prejudice would result, a court must grant leave to amend. Rather, as the Sixth Circuit later explained, "[e]ven if the Court were to agree that an amendment would not have prejudiced [the non-moving party], prejudice to [the non-moving party] is merely *a consideration* that informs whether [the movant] has satisfied the 'good cause' requirement of the *Leary* standard." *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (emphasis added). Accordingly, while the Court finds that the prejudice here is minimal, the Court nonetheless

---

15 *after* Plaintiff had established good cause under Rule 16 by showing that evidence produced in discovery was not available until after the pleading amendment deadline. *Id.* at *3–4. Here, by contrast, the question is whether the alleged lack of prejudice obviates Plaintiff's burden to establish good cause under Rule 16.

concludes, based on its review of all relevant considerations, that Lynch has not made the necessary showing of good cause under Rule 16. And as a result, the Court need not determine whether her amendments would be permitted under Rule 15's permissive standard.

### C. The Court Has Jurisdictional Concerns Warranting Further Investigation.

That leaves one remaining issue that no party raised, but that the Court has an obligation to raise sua sponte—jurisdiction. Article III courts are courts of limited jurisdiction. Consistent with that, courts have an independent obligation to ensure that a given matter falls within the contours of that jurisdiction, even when "neither of the parties has questioned this court's jurisdiction." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009); *see also Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 607 (6th Cir. 1998), *abrogated on other grounds by Thomas v. Miller*, 489 F.3d 293 (6th Cir. 2007) ("[F]ederal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction."). Here, the Court has concerns on that front.

Lynch invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1, #1). That statute provides the Court jurisdiction over actions, such as this one, involving "citizens of different states." 28 U.S.C. § 1332(a)(1). But only "where the matter in controversy exceeds the sum or value of $75,000." *Id.* § 1332(a). And to be clear, "the amount in controversy must exceed 'the sum or value of $75,000, exclusive of interest and costs.'" *Torres v. State Farm Mut. Auto. Ins. Co.*, 478 F. Supp. 2d 924, 926 (E.D. Mich. 2007) (quoting 28 U.S.C. § 1332(a)). Moreover, "[t]he party invoking

federal court jurisdiction—in this case, [Lynch]—has the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met." *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010).

Here the Court has concerns about the amount in controversy requirement. Start with the test that applies. "The well-established test for deciding whether the amount requirement is met states: 'The sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 14–15 (1st Cir. 2023) (cleaned up) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). The problem in applying that "well-established test" here is that Lynch does not list any sum. Nor does she allege any facts from which the Court could divine the likely amount at issue. For example, she does not allege the amount of time she remained unemployed after Hitachi terminated her, her salary during her employment, the nature or extent of any emotional distress she may have suffered, or the "adverse tax consequences" to which she refers. (*See* Doc. 1, #7).

The Court needs more than that. As the Supreme Court has explained, "[i]f [plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged *the court may still insist that the jurisdictional facts be established or the case be dismissed.*" *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S.

17

178, 189 (1936) (emphasis added). Given the paucity of Lynch's allegations, here the Court will so insist. Accordingly, the Court **ORDERS** Lynch to provide additional briefing attaching competent evidence establishing that she meets the amount-in-controversy requirement.

And in providing that evidence, a couple of things bear noting. First, "attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007). Second, Ohio Revised Code § 4112.02[8], the statute under which Lynch may be seeking relief (the Complaint fails to specify the statute under which she sues), does not explicitly authorize attorneys' fees. *See Taglione v. Charter Commc'ns, LLC*, Case No. 2:19-cv-528, 2019 WL 4267349, at *4 (S.D. Ohio Sept. 10, 2019) ("It does not appear that § 4112.02 permits an award of attorney's fees."). However, "[a] plaintiff suing under § 4112.02 is entitled to any legal or equitable relief, including compensatory or punitive damages." *Id.* So punitive damages perhaps can be included in calculating the amount in controversy (subject

---

[8] In her earlier state-court complaint, Lynch asserted violations of both Ohio Revised Code §§ 4112.02 and 4112.99. (*See, e.g.,* Doc. 11-3, #82). However, given recent amendments, "§ 4112.99 does not apply to employment discrimination actions." *Jones v. City of Cincinnati*, Case No. 1:22-cv-530, 2024 WL 707288, *1 n.1 (S.D. Ohio Feb. 24, 2024); *see also* Ohio Rev. Code § 4112.99(B) ("A person is prohibited from bringing a civil action for employment discrimination under this section.").

18

to constitutional limitations[9]); attorney's fees, however, likely cannot as Ohio Revised Code § 4112.02 does not explicitly provide for them.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** Plaintiff's Motion to Amend Complaint (Doc. 9). The Court further **ORDERS** Plaintiff to provide, on or before November 18, 2024, additional evidence regarding the amount in controversy. Defendants shall have fourteen days after Lynch files in which to respond to that evidence.

**SO ORDERED.**

November 12, 2024
**DATE**                                  **DOUGLAS R. COLE**
                                          **UNITED STATES DISTRICT JUDGE**

---

[9] "Normally, punitive damages awards are limited to no more than 10 times the compensatory damages awarded." *Shaffer v. Brink's U.S.*, No. 2:10-cv-331, 2010 WL 2302355, at *2 (S.D. Ohio June 8, 2010).